








BAR   7/16/01    14:22
3:01-CV-01206   BANC OF AMERICA V. APOLLO FISHERIES
*5*
*P/A.*

ORIGINAL

1  PILLSBURY WINTHROP LLP
   JENNIE L. LA PRADE # 82224
2  725 South Figueroa Street, Suite 2800
   Los Angeles, CA 90017-5406
3  Telephone: (213) 488-7100
   Facsimile: (213) 629-1033
4

5  PILLSBURY WINTHROP LLP
   RICHARD M. SEGAL #156975
6  MICHELLE L. ADAMS #198956
   101 West Broadway, Suite 1800
7  San Diego, CA 92101-8219
   Telephone: (619) 234-5000
8  Facsimile: (619) 236-1995

9  Attorneys for Plaintiff
   BANC OF AMERICA SPECIALTY FINANCE, INC.
10

11
                    UNITED STATES DISTRICT COURT
12
                   SOUTHERN DISTRICT OF CALIFORNIA
13

14

15 ┌─────────────────────────────────┐
   BANC OF AMERICA SPECIALTY        )  Case No. 01cv1206 BTM (LSP)
16 FINANCE, INC., a North Carolina  )
   Corporation, successor-in-interest and )
17 formerly known as NATIONSCREDIT  )  MEMORANDUM OF POINTS AND
   COMMERCIAL CORPORATION OF        )  AUTHORITIES IN SUPPORT OF
18 AMERICA,                         )  MOTION FOR WRIT OF
                                    )  POSSESSION AND TURNOVER
19               Plaintiff,         )  ORDER
                                    )
20      vs.                         )  Date:      August 21, 2001
                                    )  Time:      2:30 p.m.
21 APOLLO FISHERIES SERVICE, INC. dba )  Courtroom: 15
   BLUE PORPOISE MARINE; NATALIE    )
22 CINTAS-GLADNICK, an individual, and )  Hon. Barry T. Moskowitz
   RONALD GLADNICK, an individual,  )
23                                  )  [ORAL ARGUMENT REQUESTED
                 Defendants.        )  BY COURT]
24 └─────────────────────────────────┘

25

26

27

28

50141980v1

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTS | 1 |
| | A. BLUE PORPOISE'S DEFAULT UNDER THE SECURITY AGREEMENT—INVENTORY | 2 |
| | B. BLUE PORPOISE'S FAILURE TO COMPLY WITH THE TERMS OF THE AGREEMENTS | 3 |
| III. | ARGUMENT | 3 |
| | A. SPECIALTY FINANCE SEEKS A WRIT OF POSSESSION BASED ON ITS FIRST CAUSE OF ACTION FOR BREACH OF THE INVENTORY AGREEMENT, AND ITS THIRD CAUSE OF ACTION FOR BREACH OF SECURITY AGREEMENT AND POSSESSION OF PERSONAL PROPERTY | 3 |
| | B. A WRIT OF POSSESSION SHOULD BE ISSUED BECAUSE SPECIALTY FINANCE HAS ESTABLISHED THE PROBABLE VALIDITY OF ITS CLAIM TO POSSESSION OF THE COLLATERAL | 4 |
| IV. | CONCLUSION | 7 |
| | 1. A WRIT OF POSSESSION PERMITTING THE U.S. MARSHAL OR ITS APPOINTED CUSTODIAN TO TAKE POSSESSION OF THE COLLATERAL; | 7 |
| | 2. A TURNOVER ORDER REQUIRING THAT BLUE PORPOISE TURNOVER THE COLLATERAL TO SPECIALTY FINANCE WITHOUT THE NECESSITY OF INVOLVING THE U.S. MARSHAL'S OFFICE. | 7 |

# TABLE OF AUTHORITIES

Page

**STATE CASES**

Banducci v. Sresovich
    (1921) 52 Cal. App. 637 ........................................................................................... 5

Gautier v. General Telephone Co.
    (1965) 234 Cal. App. 2d 302 ................................................................................... 5

Stockton Morris Plan Co. v. Mariposa County
    (1950) 99 Cal. App. 2d 210 ..................................................................................... 5

**MISCELLANEOUS**

4 Witkin, California Procedure (4th ed. 1997) ............................................................. 5

| | |
|---|---|
| 1 | <div align="center">MEMORANDUM OF POINTS AND AUTHORITIES</div> |
| 2 | Plaintiff BANC OF AMERICA SPECIALTY FINANCE, INC., a North Carolina |
| 3 | corporation ("Specialty Finance"), successor-in-interest to and formerly known as |
| 4 | NATIONSCREDIT COMMERCIAL CORPORATION OF AMERICA, submits the |
| 5 | following memorandum of points and authorities in support of its application for a writ of |
| 6 | possession and turnover order. |
| 7 | I.   INTRODUCTION. |
| 8 | This is an action for breach of inventory financing agreements pursuant to which |
| 9 | Specialty Finance financed the purchase of inventory by defendant APOLLO FISHERIES |
| 10 | SERVICE, INC. dba BLUE PORPOISE MARINE ("Blue Porpoise"), a corporation doing |
| 11 | business in San Diego, California. The inventory financing agreement is secured by one |
| 12 | security agreement pursuant to which Blue Porpoise granted Specialty Finance a first |
| 13 | priority security interest in, among other things, all inventory owned by Blue Porpoise, |
| 14 | including inventory financed by Specialty Finance and otherwise acquired by Blue |
| 15 | Porpoise. |
| 16 | As shown below, Specialty Finance has performed all of its obligations under the |
| 17 | inventory financing agreement. Blue Porpoise, however, has breached the inventory |
| 18 | financing agreements by, among other things, defaulting on its payment obligations to |
| 19 | Specialty Finance under the agreement and by failing to deliver to Specialty Finance |
| 20 | exclusive possession of all collateral subject to the security agreement. Accordingly, a writ |
| 21 | of possession is proper in accordance with Specialty Finance's Application and supporting |
| 22 | documents. |
| 23 | II.   FACTS. |
| 24 | Based on the facts set forth in the Declaration of Kenneth Daigrepont ("Daigrepont |
| 25 | Declaration" or "Daigrepont Dec."), Specialty Finance is entitled to a writ of possession to |
| 26 | exercise its rights and remedies as a secured creditor under the California Commercial |
| 27 | Code: |
| 28 | |

A.  **Blue Porpoise's Default Under The Security Agreement—Inventory.**

On or about July 29, 1997, Specialty Finance on the one hand, and Blue Porpoise, through its president, Natalie Cintas-Gladnick, on the other hand, entered into a written "Security Agreement – Inventory" ("Agreement"). A true and correct copy of the Agreement is attached to the Daigrepont Declaration as Exhibit A. Pursuant to the Agreement, Specialty Finance has financed the purchase by Blue Porpoise of certain boat inventory for resale. Daigrepont Dec., ¶ 6(c).

Pursuant to the Agreement, Specialty Finance agreed to finance Blue Porpoise's purchase of inventory by extending credit to Blue Porpoise in such amounts as Specialty Finance in its sole discretion would decide to grant. Id. Pursuant to the terms of the Agreement, Blue Porpoise promised to repay Specialty Finance the amount of funds advanced by Specialty Finance toward inventory purchases by Blue Porpoise, according to the terms prescribed in the Agreements. Id.

Under the Agreement, Blue Porpoise is required to pay a manufacturer's invoice in full when the unit is sold by Blue Porpoise or when the unit is deemed mature, 360 to 365 days after the date of the manufacturer's invoice. Id. Failure to pay any obligations under the Agreement when due or failure to pay a manufacturer's invoice in a timely manner following the sale of Specialty Finance-financed inventory constitutes a default under the Agreement. Id. Additionally, Blue Porpoise is obligated to pay interest on matured amounts at the rate of up to 15% per month, or as otherwise set forth in the periodic invoices. Id.

As security for payment of sums advanced on Blue Porpoise's behalf under the Agreement and in partial consideration for the Agreement, Blue Porpoise executed and delivered to Specialty Finance a UCC-1 Financing Statement, whereby Specialty Finance received and perfected a first lien security interest in all collateral of Blue Porpoise. Id., ¶ 6(e).

B. **Blue Porpoise's Failure To Comply With the Terms of the Agreements.**

As set forth in the Daigrepont Declaration, Blue Porpoise has defaulted on its obligations under the Agreement with Specialty Finance by, among other things, (1) defaulting on its payment obligations to Specialty Finance by, among other things, failing to pay for matured items financed by Specialty Finance, and (2) failing to deliver to Specialty Finance exclusive possession of all Collateral subject to the Agreement. Id., ¶ 6(g). There is currently due, owing and unpaid from Blue Porpoise to Specialty Finance the amount of $234,475.00, which includes past-due curtailment charges through to June 27, 2001 in the amount of $3,946.39, plus accrued and unpaid interest charges due and payable in the amount of $2,826.92 through May 31, 2001 (but does not include interest having accrued since May 31, 2001 and which continues to accrue). Id., ¶ 10. Although demand has been made for turnover of the Collateral, Blue Porpoise has refused to turn over the Collateral to Specialty Finance. Id., ¶ 13.

Because of Blue Porpoise's continuing defaults under the Agreement, Specialty Finance could no longer forebear from exercising its rights and remedies. Accordingly, Specialty Finance ceased extending all credit to Blue Porpoise and in July of 2001 Specialty Finance initiated the instant action.

Based on the foregoing facts, Specialty Finance is entitled to a writ of possession to exercise its rights and remedies as a secured creditor under the California Commercial Code.

III. **ARGUMENT.**

A. **Specialty Finance Seeks A Writ of Possession Based On Its First Cause Of Action For Breach Of The Inventory Agreement, And Its Third Cause Of Action For Breach Of Security Agreement and Possession of Personal Property.**

The elements of a cause of action for breach of contract are: (1) the existence of an underlying contract, transaction, or series of transactions; (2) plaintiff's performance on the underlying contract or excuse for nonperformance; (3) defendant's failure to pay or perform

its obligations; (4) and plaintiff's damages. <u>Gautier v. General Telephone Co.</u> (1965) 234 Cal.App.2d 302, 305; <u>Banducci v. Sresovich</u> (1921) 52 Cal.App. 637. See also 4 Witkin, <u>California Procedure</u> (4th ed. 1997), Pleading § 476.

The elements of a cause of action for breach of security agreement are: (1) the existence of an underlying security agreement which grants plaintiff a security interest in collateral; (2) that the security agreement was given for consideration and secures an underlying indebtedness; (3) plaintiff's performance on the underlying contract and the right to possession of the collateral; (4) breach by defendant of the security agreement and wrongful possession of the collateral; and (5) plaintiff's damages. <u>Stockton Morris Plan Co. v. Mariposa County</u> (1950) 99 Cal.App.2d 210.

The Daigrepont Declaration and Specialty Finance's complaint on file herein establish all of these essential elements.

B. <u>A Writ Of Possession Should Be Issued Because Specialty Finance Has Established The Probable Validity Of Its Claim To Possession Of The Collateral.</u>

Section 512.60 of the California Code of Civil Procedure provides that a writ of possession[1] shall issue if both of the following are found:

(1) The plaintiff has established the probable validity of his claim to possession of the property.

(2) The plaintiff has provided an undertaking as required by Section 515.010.

---

[1] Specialty Finance files together with the Order granting Writ of Possession a "(Proposed) Order Appointing Substitute Custodian To The United States Marshal." In the event the Court grants the Writ of Possession, the United States Marshal requires an additional order to enable the Marshal's Office to appoint a "custodian" to take possession of the boats and engines, which custodian will install a 24-hour keeper at defendant's location or will proceed to take possession of the boats and engines. Such substitute custodian will relieve the U.S. Marshal's Office of having to post its officers where the boats are located. Additionally, Specialty Finance lodges a Turnover Order pursuant to which Blue Porpoise is ordered to turnover the Collateral directly to Specialty Finance without the necessity of the U.S. Marshal enforcing the Writ of Possession. However, in the event Blue Porpoise fails to comply with the Turnover Order, Specialty Finance will be required to enlist the aid of the U.S. Marshal's Office pursuant to the Writ of Possession.

Section 512.060 of the Code of Civil Procedure further provides that:

> No writ directing the levying officer to enter a private place to take possession of any property shall be issued unless the plaintiff has established that there is probable cause to believe that such property is located there.

Pursuant to section 511.090 of the Code of Civil Procedure Code, a claim has "probable validity" where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim. This standard thus requires that Specialty Finance demonstrate a prima facie case for its claims.

The statement of facts set forth above, as supported by the Daigrepont Declaration, makes out a prima facie case that Blue Porpoise has breached the Agreement. Specifically, Specialty Finance has established the existence of and its performance of all terms of the Agreement. Daigrepont Dec., ¶ 7. Specialty Finance has also established that Blue Porpoise breached the Agreement by defaulting on its payment obligations to Specialty Finance, (id. at ¶ 6(g)), and by failing to deliver to Specialty Finance exclusive possession of all Collateral subject to the Agreement. Id.

With respect to the Agreement which grants Specialty Finance a security interest in the Collateral, Specialty Finance has also established a prima facie case. Specialty Finance has shown (1) that a security interest exists which secures the outstanding loan obligations of Blue Porpoise to Specialty Finance under the Agreement (id., ¶ 6(c) and (d)); (2) that Specialty Finance has perfected its security interest in the Collateral (id., ¶ 6(e)); (3) that Specialty Finance has complied with and performed all provisions of the Agreement on its part to be performed (id., ¶ 7); (4) that Blue Porpoise has breached its obligations to Specialty Finance pursuant to the Agreement (id., ¶ 6(g)); and (5) that Specialty Finance is entitled to immediate and exclusive possession of the Collateral, which Blue Porpoise refuses to relinquish (Id., ¶¶ 13, 15).

1    Accordingly, Specialty Finance has established the requisite probable validity as to
2    its claim to possession of the Collateral as required under Section 512.060(a)(1) of the
3    California Code of Civil Procedure.

4    Specialty Finance has further established probable cause that the Collateral specified
5    in Exhibit A attached to the Writ of Possession and Turnover Order is present at Blue
6    Porpoise's place of business located at 1455 West Morena Blvd., San Diego, California
7    92110. Daigrepont Dec., ¶ 17. Said Collateral consists of the following boats and engines:

```
Model No. 208ADVEN
Serial No. NTLAD570J

Model No. 200 HP
Serial No. 100119

Model No. 209ESCAP
Serial No. NTLSC569K

Model No. 200 HP
Serial No. 101202

Model No. 208ADVEN
Serial No. NTLAD675C

Model No. 233TOURN
Serial No. NTLBK325

Model No. 200 HP
Serial No. 102730

Model No. 200 HP
Serial No. 1AX105885

Model No. 300MARLI
Serial No. NTLEA341

Model No. 250 HP
Serial No. 1BX103159

Model No. 247ADVEN
Serial No. NTLST338

Model No. 115 HP
Serial No. 800507
```

1 | Model No. 115 HP
2 | Serial No. 702198

IV. CONCLUSION.

Based upon all of the foregoing, Specialty Finance respectfully submits that it is entitled to this Court's Order granting the following:

1. a Writ of Possession permitting the U.S. Marshal or its appointed custodian to take possession of the Collateral;

2. a Turnover Order requiring that Blue Porpoise turnover the Collateral to Specialty Finance without the necessity of involving the U.S. Marshal's Office.

Dated: July 9, 2001

PILLSBURY WINTHROP LLP
JENNIE L. LA PRADE
RICHARD M. SEGAL
MICHELLE L. ADAMS

By _____
Michelle L. Adams
Attorneys for Plaintiff
BANC OF AMERICA SPECIALTY FINANCE, INC., successor-in-interest to NATIONSCREDIT COMMERCIAL CORPORATION OF AMERICA