















KSR    11/16/01    10:30

3:01-CV-01206   BANC OF AMERICA V. APOLLO FISHERIES

*58*

*BR.*

1 | KNUT S. JOHNSON (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
2 | 1010 Second Avenue, Suite 1850
San Diego, California 92101
3 | (619) 232-7080 (Phone)
(619) 232-7324 (Fax)
4
Attorney for NATALIE CINTAS-GLADNICK
5

FILED

NOV 14 2001

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

6

7 | BANC OF AMERICA SPECIALTY
FINANCE, INC. et al,

8 |            Plaintiff,

9 |            vs.

10 | APOLLO FISHERIES SERVICE, INC. et
al,

11

12 |            Defendanta.

CASE NO. 01 cv 1206 BTM (LSP)

**BRIEF IN SUPPORT OF DISMISSAL
OF CONTEMPT CHARGE**

Date: November 16, 2001
Time: 9:00 a.m.

13 | TO: PLAINTIFF UNITED STATES OF AMERICA AND ITS ATTORNEYS OF
RECORD, PATRICK J. O'TOOLE, U.S. ATTORNEY AND Assistant U.S. Attorney
14 | GEORGE AGUILLAR:

15

16 | PLEASE TAKE NOTICE that the defendant NATALIE CINTAS-GLADNICK
makes the following argument in support of her motion to dismiss the contempt charge:

17

## I.    INTRODUCTION

18 | This Court has tried Natalie Cintas-Gladnick ("Ms. Cintas") for several counts

19 | related to alleged contempt of court. That trial was without a jury because this Court

20

21 | announced that the maximum sentence it would impose would be six months of

22 | custody or less. However, Ms. Cintas never waived jury.

23 | This Court acquitted Ms. Cintas of all counts related to willfully violating a court

24 | order. However, this Court then found beyond a reasonable doubt that Ms. Cintas

25

26 | perjured herself when she stated in the Cintas Declaration that she had (a)

27 | "segregated" the $98,080.00 and that she had (b) "not utilized funds received from the

28



-   01 cv 1206 BTM (LSP)

1  sale of [Bank of America's] collateral to pay any other debts."

2      This Court has now asked for briefing on whether it may punish  Ms. Cintas

3  under the contempt laws for that perjury.   Ms. Cintas argues herein that this Court may

4  not hold her in contempt because the record does not establish an actual obstruction

5  of justice by Ms. Cintas in or near the presence of the court and, thus, she was entitled

6
7  to a jury trial.   Therefore, Ms. Cintas argues that this Court should dismiss this case.

8
                              II.    **FACTS**

9      On July 30, 2001 the plaintiffs ("Bank of America") filed an Application for Ex

10
11  Parte Application for Writ of Possession and Temporary Restraining Order

12  ("Application").  (Clerk's Docket 11.)  That Application specified certain boats and

13  engines as the "Collateral" that Bank of America sought, but it did not ask for any relief

14  related to the $98,080.00 from the sale of the "Frantz Boat."

15      On August 1, 2001, the defendants filed the declaration (the "Cintas

16
   Declaration") that forms the basis of this Court's Notice of Contempt Hearing, filed on
17
18  August 21, 2001, in opposition to the Application.    The portion of the Cintas

19  Declaration that the Court later found to be false related only to the $98,080.00 from

20  the sale of the "Frantz Boat."  On August 3, 2001, this Court granted a Temporary

21
22  Restraining Order for Bank of America, and denied only the application for a writ of

23  possession.

24      On August 8, 2001, this Court held a hearing on Bank of America's application.

25  At that hearing, counsel for Ms. Cintas argued that Bank of America had "not sought"

26  any relief related to the $98,080.00 from the sale of the "Frantz Boat."  This Court then

27  granted the all the relief Bank of America asked for, the application for a writ of

28

possession and turnover order for the specified collateral, including the $98,080.00.

The following day, August 9, 2001, Ms. Cintas-Gladnick did not pay the $98,080.00. The proof in this case was that she did not have the $98,080.00 at that time, but that she had the ability to borrow that money within a few days. On August 10, 2001, Bank of America asked the Court for attachment against Ms. Cintas. (Ex. 16; page 40.) On that same date this Court granted that relief. Within several business days Ms. Cintas paid the $98,080.00 to Bank of America after borrowing the funds.

### III.   MS. CINTAS WAS ENTITLED TO A JURY TRIAL

The Congress has enacted several statutes to ensure that a person charged with contempt is entitled to receive a jury trial under certain circumstances. In United States v. Pyle, 518 F. Supp 139 (E.D. Penn.), the court examined at length the legislative history and historical underpinnings of that right. According to the Pyle court, 18 U.S.C. § 401, 402, and 3691 guarantee a jury trial to anyone who commits an act that is alleged to be in contempt of court if that act is also a crime, unless that act disobeys a court order or is in or so near the presence of the court that it obstructs the administration of justice. That right is "intended to end an abuse of the contempt power in which, in some circumstances, persons were prosecuted for contempt of injunctions instead of violations of criminal laws . . . and were thus deprived of their right to trial by jury." Id. at 146.

Title 18 U.S.C. § 401 provides, in whole, as follows:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority,          and          none          others,          as--
> (1) Misbehavior of any person in its presence or so near

3

- 01 cv 1206 BTM (LSP)

thereto as to obstruct the administration of justice;

   (2) Misbehavior of any of its officers in their official transactions;

   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Title 18 U.S.C. § 402 provides, in whole, as follows (emphasis added):

Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, **if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States** or under the laws of any State in which the act was committed, **shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by a fine under this title or imprisonment, or both.**

Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but **in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $ 1,000, nor shall such imprisonment exceed the term of six months.**

Section 3691 provides for a jury trial if the act constituting the alleged contempt is also a crime, unless that act disobeys a court order or is in or so near the presence of the court that it obstructs the administration of justice. Thus, § 402 in combination with § 3691 provides that contempt cases under section 402 are misdemeanors with a maximum six-month custodial sentence with a jury trial if the act is also a crime, such a perjury.

In this case this neither § 401(2) nor § 401(3) can apply to an act of perjury. First, Ms. Cintas is not "an officer" and did not act in an "official transaction." See, Camera v. United States, 350 U.S. 399 (1959) (Even attorneys are not "officers" under § 401(2).) Second, the Cintas Declaration was not filed in "disobedience or resistance"

4

-   01 cv 1206 BTM (LSP)

1  to any court "writ, process, order, rule, decree, or command." Thus, the only question

2  is whether the Cintas Declaration was "misbehavior of any person in its presence or so

3  near thereto as to obstruct the administration of justice."

4      In this case, Ms. Cintas signed the declaration in her office and faxed it to her

5  attorney. Later, her attorney filed the declaration. Thus, her signature was not in or so

6  near the presence of the court that it obstructs the administration of justice. Although

7  counsel for Ms. Cintas can find no cases directly on point (a party signing a declaration

8  that an attorney later files in court), that phrase has been construed as imposing a

9  geographical, as opposed to a causal, limitation on a court's contempt power under §

10  401(1). Nye v. United States, 313 U.S. 33, 48 (1941).

11      In Nye, the plaintiff (Elmore) brought an action against the defendants alleging

12  that his son died as the result of the use of a medicine manufactured by the

13  defendants. Elmore was described as "illiterate and feeble in mind and body." Id. at

14  39. Respondents, Nye and Mayers, through the "use of liquor and persuasion,"

15  induced Elmore dismiss the suit. The Court, after describing respondents' conduct as

16  "highly reprehensible," held that because it occurred more than 100 miles from the

17  courthouse, it was insufficient to satisfy the geographical limitation embodied in §

18  401(1). Id. at 49, 52.  Thus, under that ground this Court may dismiss the contempt

19  charge against Ms. Cintas.

20      Furthermore, the United States Supreme Court has held that perjury alone will

21  not constitute contempt of court; in addition to the elements of perjury the court must

22  also find actual obstruction of the judicial proceedings. In re Michael, 326 U.S. 224

23  (1945) (Predecessor statute.) The In re Michael Court in that case noted that

24  legislative intent

25

26          reveal[s] a Congressional intent to safeguard Constitutional
27          procedures by limiting courts, as Congress is limited in
           contempt cases, to "the least possible power adequate to
28          the end proposed." Anderson v. Dunn, 6 Wheat 204, 231

5

The exercise by federal courts of any broader contempt power than this would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury."   [Id. at 227.]

The Supreme Court later interpreted the second element required to support a contempt conviction under the present statute, § 401(1), identically: to constitute contempt the perjury must amount to an "*actual obstruction of justice.*" In re McConnell, 370 U.S. 230, 236 (1962).   *See also*, Temple v. United States, 386 U.S. 91 (1967). Furthermore, the obstruction must be "clearly shown." Ex Parte Hudgings, 249 U.S. 378, 383 (1919).

In United States v. Snyder, 505 F.2d 595 (5th Cir. 1974), *cert. denied* 420 U.S. 993 (1975), the court considered whether a deliberate falsification of financial statement in pre-sentence investigation is a contempt in presence of court.  In Snyder, the appellant was convicted of fraud.  During his pre-sentence investigation the appellant falsely stated in a financial statement that he had $68,000 in assets. Apparently the appellant thought that the court would be more lenient to a person with assets.  After sentencing, appellant recanted in support of an application for appointed counsel on appeal.  The district court then held appellant in contempt for perjury and sentenced him to six months custody.  Id. at 601.

Upon appeal, the Fifth Circuit in Snyder discussed In re Michael, *supra*, Hudgings, *supra*, and Nye, *supra*.  The Fifth Circuit also noted that the appellant in Snyder had received the same sentence as his co-defendant.  Based on that clear precedent requiring misconduct in or near the court (Nye) that actually and clearly obstructs justice (In re Michael and Hudgings), the Fifth Circuit reversed the contempt

6

-   01 cv 1206 BTM (LSP)

1  case because the appellant had not received a jury trial.

2      Likewise, in this case the Ms. Cintas signed the Cintas Declaration well away

3  from the Court.  Furthermore, the statement that this Court found to be perjurious was

4  not directly related to any relief that Bank of America asked for because Application

5  asked for return of Collateral and not the $98,080.00.  In addition, this Court later (but

6
7  before any suspicions arose about the Cintas Declaration) granted Bank of America all

8  the relief asked for, including the $98,080.00 Bank of America asked for <u>after</u> the

9  Cintas Declaration.  Finally, Bank of America received the $98,080.00 within days of

10  the final order.

11      Like the defendant in <u>Snyder</u> who received the same sentence despite his lies,

12
13  the Cintas Declaration did not change the result in this case.  Without such clearly

14  shown obstruction of justice, Ms. Cintas may not be punished for contempt without a

15  jury trial.  This Court should, therefore, dismiss this case

16

17              **IV.    CONCLUSION**

18  This Court should dismiss the contempt charge.

19
20  Dated:      November 14, 2001              Respectfully submitted,

21

22

23                                  Knut S. Johnson
                                    Attorney for NATALIE CINTAS-GLADNICK

24

25

26

27

28

-      01 cv 1206 BTM (LSP)